# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| CONSTANCE E. CHANCEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-08-CV-260-FM |
| | § | |
| JANET NAPOLITANO, Secretary of | § | |
| the Department of Homeland Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING CHANCEY'S MOTION REQUESTING SUMMARY JUDGMENT

On this day, the Court considered Constance E. Chancey's ("Chancey") *pro se* "Plaintiff's Motion to Requesting [sic] Summary Judgment" ("Motion Requesting Summary Judgment") [Rec. No. 61], filed on June 23, 2009; Secretary of the Department of Homeland Security Janet Napolitano's ("Defendant") "Defendant's Response to Plaintiff's Motion to Request Summary Judgment" ("Response"), filed on July 7, 2009; and "Plaintiff's Rebuttal to Defendant's Response to Plaintiff's Motion to Request Summary Judgment" ("Reply") [Rec. No. 69], filed on July 14, 2009; "Defendant's Motion for Summary Judgment" ("Motion for Summary Judgment") [Rec. No. 63], filed on June 24, 2009; and "Plaintiff's Response to Defendant's Motion for Summary Judgment" [Rec. No. 66], filed on June 30, 2009. On August 10, 2009, the Court held a hearing to hear oral argument from both parties regarding their motions for summary judgment. After carefully considering the parties' arguments, the Record, and the applicable law, the Court concludes it should grant Defendant's Motion for Summary Judgment and deny Chancey's Motion Requesting Summary Judgment.

## I. BACKGROUND

### A. *Procedural Background*

On July 11, 2008, Chancey filed "Plaintiff's Original Complaint and Jury Demand" [Rec. No. 1]. On February 23, 2009, "Plaintiff's First Amended Complaint" ("Amended Complaint") [Rec. No. 43] followed. Chancey alleges Defendant discriminated against her because of her race, color, sex, and national origin while she was employed with Customs and Border Protection ("CBP"), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

### B. *Factual Background*

Chancey has been employed by the U.S. Customs Service, now known as CBP, since 1985. Chancey is a Causcasian, white female. From August 2005 to December 2005, Chancey was the temporary GS-14 Assistant Port Director ("APD") for Trade at the El Paso Port of Entry. In January 2006, Chancey became the permanent GS-14 APD. The GS-14 APD position was then reclassified and upgraded to a GS-15 position. In August 2006, CBP advertised a single vacancy for the GS-15 APD position, which Chancey applied for and for which she was found to be qualified. In October 2006, Chancey was temporarily reassigned to the GS-14 Trade Program Manager position for the El Paso Port of Entry. Since December 2006, Chancey has remained in this position.

In September 2006, David Longoria ("Longoria"), former Port Director for the Port of El Paso, reviewed the list of qualified applicants and recommended Norman Bebon ("Bebon"), a Hispanic male, for the GS-15 position. Shortly thereafter, Luis Garcia ("Garcia"), former Director of Field Operations for El Paso, also recommended Bebon for the position based upon

Longoria's recommendation, his own review and evaluation of the qualified candidates, and his personal observation of Bebon's job performance. Garcia forwarded his recommendation to Jayson Ahern ("Ahern"), then Assistant Commissioner of the Office of Field Operation in Washington, D.C. Ahern recommended Bebon for the position based upon Garcia's recommendation and Longoria's opinion. Deborah Spero ("Spero"), former Deputy Commissioner for the Department of Homeland Security, CBP, in Washington, D.C., approved the selection of Bebon based upon Ahern's recommendation.

On December 29, 2006, Chancey filed her "Individual Complaint of Employment Discrimination" ("Complaint of Employment Discrimination") [Rec. No. 64-17] with CBP alleging she was discriminated against because of her race, sex, and for reprisal when she was not selected for the GS-15 position. On October 9, 2007, the Administrative Judge allowed Chancey to amend her Complaint of Employment Discrimination and add the bases of national origin and color. On March 12, 2009, the Administrative Judge issued her "Administrative Judge's Summary Decision" [Rec. No. 64-20], finding CBP had not discriminated against Chancey.

C.   *Parties' Motions*

In her Motion for Summary Judgment, Defendant requests the Court to enter summary judgment in her favor because "Chancey was not the best qualified candidate for the GS-15 APD position, and she has no evidence to rebut this legitimate, non-discriminatory reason for her non-selection."[1] In her Motion Requesting Summary Judgment, Chancey requests the Court to enter summary judgment in her favor because "the Administrative Judge's finding was flawed because

---

[1] Def.'s Mot. Summ. J. at 4.

there were many material facts presented by [Chancey] that were ignored that are in dispute."[2]
Although the Court understands Chancey's argument, the Court will not address whether the Administrative Judge's decision was incorrect based upon her failure to consider certain evidence. Chancey's Amended Complaint does not include a claim pursuant to the Administrative Procedure Act,[3] which would allow the Court to review the Administrative Judge's Summary Decision. Chancey's Amended Complaint only includes discrimination claims pursuant to Title VII and 42 U.S.C. § 1981. Accordingly, the Court will only focus on these discrimination claims.

## II.    APPLICABLE LAW

   *A.    Summary Judgment Standard*

Federal Rule of Civil Procedure 56 ("Rule 56") governs motions for summary judgment. The purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues."[4] Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5] Under Rule 56(c) "judgment . . . shall be

---

[2] Pl.'s Mot. Requesting Summ. J. at 2.

[3] 5 U.S.C. § 702.

[4] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6]

The party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but it need not negate the elements of the nonmovant's case.[7] Because the moving party bears the burden of proof, the Court construes the evidence in the non-movant's favor and extends her the benefit of all favorable inferences.[8] When the moving party has properly supported her summary judgment motion, the non-moving party must come forward with "significant probative evidence" showing there is an issue regarding material facts.[9] The nonmovant may not simply rely on "vague assertions that additional discovery will produce needed, but unspecified facts."[10] If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and upon which that party will bear the burden of proof

---

[6] FED. R. CIV. P. 56(c); *see Celotex*, 477 U.S. at 322-23 (setting forth the instances when summary judgment is appropriate under Rule 56(c)).

[7] *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1990) (quoting *Celotex*, 477 U.S. at 323).

[8] *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

[9] *Ferguson v. Nat'l. Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978).

[10] *S.E.C. v. Spence & Green*, 612 F.2d 896, 901 (5th Cir. 1980); *see also Celotex*, 477 U.S. at 324 ("Rule 56(c) therefore requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing [] there is a genuine issue for trial."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("Some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

at trial, then a grant of summary judgment is appropriate.[11] Even if the nonmovant presents evidence to support her allegations, summary judgment will still be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[12]

B. Title VII

Title VII provides that it is unlawful "to fail or refuse to hire . . . an[] individual . . . because of such individual's race, color, religion, sex, or national origin."[13] In employment discrimination cases, a plaintiff may prove her claim by either direct or circumstantial evidence.[14] If the plaintiff only produces circumstantial evidence of discrimination, the *McDonnell Douglas Corp. v. Green* [15] burden-shifting analysis applies.[16]

To establish a prima facie case of discrimination pursuant to Title VII in a non-selection case, a plaintiff must show (1) she was not promoted; (2) she applied for and was qualified for the position; (3) she is a member of a protected class; and (4) the position was filled by someone not of the protected class or she was otherwise not promoted because of her protected

---

[11] *Celotex*, 477 U.S. at 322.

[12] *Anderson*, 477 U.S. at 249-50.

[13] 42 U.S.C. § 2000e(a)(1).

[14] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[15] 411 U.S. 792 (1973).

[16] *Russell*, 235 F.3d at 222.

characteristic.[17] Once the plaintiff has established her prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions.[18] When an employer involved in a positive employment decision for an employee subsequently takes part in an adverse employment decision against that same employee, this gives rise to an inference that discrimination was not a motive in making the adverse decision.[19]

If the defendant proffers a nondiscriminatory reason, the plaintiff must show either (1) the defendant's reason is not true, but rather is a pretext for discrimination ("pretext alternative"), or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and plaintiff's protected characteristic is another motivating factor ("mixed-motive alternative").[20] In order to establish pretext, "a plaintiff cannot merely rely on h[er] subjective belief that discrimination has occurred."[21]

"The Fifth Circuit has instructed that "[e]vidence demonstrating the falsity of the defendant's explanation, taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive."[22] "Thus,

---

[17] *See McDonnell Douglas Corp.,* 411 U.S. at 802; *see also Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179 (5th Cir. 1999) (citation omitted) (Title VII sex discrimination claim).

[18] *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802).

[19] *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996).

[20] *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

[21] *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997) (citing *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993)).

[22] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000)).

the plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation."[23]

## III. ANALYSIS

### A. *Prima Facie Case*

It is undisputed Chancey satisfies the four prongs for establishing a prima facie case of discrimination pursuant to Title VII. Chancey was not promoted, was qualified for the position, is a member of a protected class, and the position was filled by someone not of the protected class.[24]

### B. *Legitimate, Nondiscriminatory Reasons*

Defendant states her legitimate, nondiscriminatory reason for not selecting Chancey for the GS-15 APD position is that she was not the best qualified candidate.[25] Defendant proffers six specific reasons for selecting Bebon instead of Chancey. First, Defendant states Bebon had a college degree, whereas Chancey did not have a college degree.[26] Bebon received a bachelor's degree from St. Mary's University, while Chancey had not completed a bachelor's degree.[27] Second, Defendant states Bebon had more experience than Chancey as a uniformed

---

[23] *Id.*

[24] *See* Def.'s Mot. Summ. J. at 4.

[25] *Id.* at 5.

[26] *Id.* at 6-7; Def.'s Resp. at 7.

[27] Def.'s Mot. Summ. J, Ex. 5, Bebon's Resume, EDUCATION [Rec. No. 64-6] ("Bebon's Resume"); Ex. 3, Chancey's Resume, EDUCATION [Rec. No. 64-4].

8

officer.[28] For approximately ten years, from 1997-2007, Bebon served as a uniformed officer, whereas Chancey had only served as a uniformed officer from May 1986, to March 1989.[29] Third, Defendant states Bebon had more experience than Chancey in supervising uniformed officers.[30] Since 1997, Bebon has supervised uniformed Customs and CBP officers, whereas Chancey had only supervised uniformed officers from August 2005, to October 2006, during her time in the GS-14 APD position.[31] Fourth, Defendant states Bebon successfully served as a Port Director for two ports of entry, but Chancey did not have any experience as a Port Director.[32] Bebon served as a Port Director at both the Columbus, New Mexico, and Santa Teresa, New Mexico, ports of entry, whereas Chancey never served as a Port Director.[33] Fifth, Defendant states Bebon had more experience than Chancey at managing both passenger and cargo operations at both ground and airport entries.[34] As the Port Director for both the Columbus and Santa Teresa, New Mexico, ports of entry, Bebon managed both passenger and cargo operations.[35] While stationed at Santa Teresa, New Mexico, he also supervised the Albuquerque

---

[28] Def.'s Mot. Summ. J. at 6, 8; Def.'s Resp. at 7.

[29] Bebon's Resume, WORK EXPERIENCE; Def.'s Mot. Summ. J., Ex. 2, Chancey Dep. Tr. 13:18-22, Oct. 17, 2007 [Rec. No. 64-3] ("Chancey Dep. Tr.").

[30] Def.'s Mot. Summ. J. at 7-8; Def.'s Resp. at 7.

[31] Bebon's Resume, WORK EXPERIENCE; Def.'s Mot. Summ. J., Ex. 10, Garcia Aff. 3, Oct. 29, 2007 [Rec. No. 64-11]; Chancey Dep. Tr. 13:24-25, 41:3-25, 15:1-7.

[32] Def.'s Mot. Summ. J. at 6, 8; Def.'s Resp. at 7.

[33] Bebon's Resume, WORK EXPERIENCE; Chancey Dep. Tr. 31:21-24.

[34] Def.'s Mot. Summ. J. at 6-7; Def.'s Resp. at 7.

[35] Bebon's Resume, WORK EXPERIENCE.

International Sunport cargo operations and the Roswell User Fee airport in New Mexico.[36] Finally, Defendant states Bebon successfully worked with the trade community, but Chancey's contacts with the trade community resulted in negative feedback.[37] Bebon hosted meetings with bi-national trade stakeholders and worked with New Mexico's elected officials,[38] whereas the trade community complained about Chancey's lack of tact in her dealings.[39] Moreover, there is no dispute that Garcia, who initially selected Chancey for the GS-14 APD position in El Paso, is the same person who recommended Bebon for the GS-15 position, which gives rise to an inference that Defendant was not motivated by discrimination.[40]

Because Defendant's evidence is sufficient for a trier of fact to conclude Defendant did not select Chancey for the position because of legitimate, nondiscriminatory reasons, the Court concludes Defendant has met its burden.

C. *Pretext*

In her Reply, Chancey recites several reasons to support her argument that Defendant's proffered reasons are false. First, Chancey does not dispute the lack of a college degree, but that this position was based solely on qualifications, i.e., Knowledge, Skills, and Abilities.[41] Second, Chancey argues Bebon's resume only reflected three years of experience with CBP, but she had

---

[36] Def.'s Mot. Summ. J., Ex. 9, Garcia Decl. 4, Mar. 16, 2007.

[37] Def.'s Mot. Summ. J. at 6-8; Def.'s Resp. at 7.

[38] Garcia Decl. 4

[39] Def.'s Mot. Summ. J., Ex. 7, Longoria Decl. ¶ 10, Mar. 27, 2007.

[40] *See Brown,* 82 F.3d at 658.

[41] Chancey's Reply at 4.

served approximately three years as a uniformed officer.⁴² Third, Chancey argues she supervised 150 uniformed officers for fifteen months, which was more than Bebon's three years of supervising approximately fifty officers.⁴³ Fourth, Chancey argues that while she has never been a Port Director, as the APD in El Paso, she managed and oversaw a substantially higher volume of commercial traffic and importations than Bebon had during his time as Port Director at both the Columbus and Santa Teresa, New Mexico, ports of entry.⁴⁴ Fifth, Chancey argues she was subjected to a different set of criteria because in applying for a Trade position, both management of passenger and cargo operations was irrelevant.⁴⁵ Finally, Chancey argues that it is clear from her resume that she had more bi-national experience than Bebon, and Longoria had never addressed any negative feedback he may have received from the trade community with her.⁴⁶

In response, Defendant argues Chancey's pretext argument fails because "Chancey's only evidence of discrimination is her unsubstantiated, subjective belief that she was discriminated

---

⁴² *Id.* at 5. Throughout Chancey's filings, she maintains that Bebon supplemented the resume he submitted for the GS-15 vacancy. Chancey claims the resume Bebon initially submitted only showed he had three years experience with CBP. She claims he submitted a modified resume after the closing date of the vacancy. However, the Court will not address this issue because Chancey claims it should have been rectified during the administrative process, and the Court has previously ruled it must not review the Administrative Judge's process and summary decision. However, the Court notes that in Bebon's Affidavit, Def.'s Mot. Summ. J., Ex. 5 [Rec. No. 64-6], he avers he did not modify, alter, or update his resume, attached as Ex. 5, during the selection process. The Court further considered Chancey's argument at the August 10, 2009, hearing and found it to be irrelevant to the claims pending before the Court.

⁴³ *Id; see also* Court's explanation, *supra* note 42.

⁴⁴ *Id.*

⁴⁵ *Id.* at 5-6.

⁴⁶ *Id.* at 6.

11

against."[47]

D.    *Court's Finding*

Upon reviewing the parties' evidence and considering the parties' written and oral argument, the Court concludes Chancey has not raised a genuine issue of material fact regarding whether Defendant's stated reasons for Chancey's non-selection were false and a pretext for discrimination. Although Chancey recites many reasons she believes Defendant's reasons are a pretext, Chancey has offered no evidentiary support. Chancey relies only on her subjective belief that she was discriminated against. This is simply insufficient to meet her burden under the current legal standards.[48]

Moreover, in order for the Court to be able to infer pretext, Chancey must show that she was "'clearly better qualified' (as opposed to merely better or as qualified) than the employee[] who [was] selected."[49] "In order to establish pretext by showing the losing candidate has superior qualifications, the losing candidate's qualifications must 'leap from the record and cry out to all who would listen that [s]he was vastly-or even clearly-more qualified for the subject job.'"[50] Although Chancey has continuously argued she was clearly better qualified for the position, the Record does not support this showing. Rather, the evidence, including the pleadings, depositions, and affidavits shows Bebon was as qualified, if not more qualified, than

---

[47] Def.'s Mot. Summ. J. at 8.

[48] *See Marathon Cheese Corp.*, 119 F.3d at 337 (citing *Waggoner*, 987 F.2d at 1166).

[49] *Price*, 283 F.3d at 723 (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)).

[50] *Id.* (quoting *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)).

Chancey.

After reviewing the record in the light most favorable to Chancey and resolving all inferences in her favor, the Court concludes there is no evidence of discrimination. Accordingly, Chancey's claims of non-selection based upon race, color, sex, and national origin fail as a matter of law.

## IV.    ORDERS

For the reasons discussed, **IT IS HEREBY ORDERED** Defendant's Motion for Summary Judgment [Rec. No. 63] is **GRANTED**, and Chancey's Motion Requesting Summary Judgment [Rec. No. 61] is **DENIED**.

**SO ORDERED.**

**SIGNED** this **12th** day of **August, 2009.**

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**